Our next case is In Re Relativity Fashion, Netflix Vs. Relativity Good morning, Your Honors. May it please the Court, Steven Mick and Tonya Klosner on behalf of Netflix. This case presents three important jurisdictional issues that converge on the same thing. All three issues point to the conclusion that the bankruptcy court lacked the power to decide a state law contract dispute arising after the former debtor had emerged from bankruptcy and based on a pre-petition contract. First, the Federal Arbitration Act and the parties arbitration agreement compelled that this dispute be decided in arbitration in accordance with this court's decision in MBNA. Before you go on, Mr. Mick, in your reply brief, in a footnote, you agree that some aspects of the bankruptcy court's order are moot. Is that correct? The specific factual question of when the films would be released is now water under the bridge because the films were, in fact, theatrically released last September and they have- Mootness, so what are the legal implications of that? What else is moot as a result of the two films having been released? There is a provision, I believe it is paragraph six of the order, which prohibits Netflix from releasing these films prior to their theatrical release because the theatrical release has occurred and- So you're injured for that period of time from when you say you should have been allowed to release them to whatever the release provision after your streaming after-releases. Is that what the lawsuit is now about? It's about more than that, Your Honor. You're correct that the injury survives. I was pointing out that the specific injunctive provision is no longer at issue because the events have passed it by. In addition to the injury over that period of time, there are two other aspects of the dispute that survive. First, there is a bankruptcy court order awarding $820,000 in fees associated with the original ruling. Second, and perhaps of more consequence given the jurisdictional issues here, the ruling purports to interpret the party's output agreement, which agreement survives for another 16 months at a minimum and potentially three years depending upon events. The appellee here, Relativity, has contended in another forum that the rulings of the bankruptcy court constitute a race judicata finding with respect to the party's rights and obligations under that agreement. Thus, that ruling haunts Netflix going forward for years to come so long as it is asserted to be a race judicata adjudication of what the rights and duties of the parties are because the fundamental objections that Netflix raises here are that the bankruptcy court could not and should not have decided those issues, that Netflix had a contractual right to have that decided in arbitration and a constitutional right to have it decided by a jury if not in arbitration. That ruling's race judicata effect is a continuous shadow that makes the injury... So the shadow of the output agreement ruling and the $800,000 in fees. Those are the big two, yes, Your Honor. But does the shadow... I want all of them. Does the shadow persist longer than the term of the contract? It does not persist longer than the term of the contract, but the term of the contract because it's an output agreement goes forward for years to come. There's a 17-month remaining term for relativity to deliver films under the contract, and then any film delivered under the contract is subject to the contract's terms for the life of the license, which is the term of the agreement and the implications here would go on for roughly three and a half years. The contract had to do with a certain number of films. It's an output agreement, so it has to do with every film that is delivered by relativity within the time period that's in question. In theory, that could be dozens. In theory, it could be zero. Only time will tell. But we are stuck with the findings of the bankruptcy court, which should not have, as we have indicated in our briefs, the power to have adjudicated this original pre-petition contract disputed. You said those are the two big issues. Are there any other issues? There is technically a question of whether or not Netflix was deprived of the right to release the film in June of 2016 and, in fact, had to wait nearly a year. When you say technically, you don't ... So really, we're talking about the output agreement and the $800,000. It would be ... These films did not do very well, Your Honor, and so the loss of the opportunity to release them early might be somewhat speculative in terms of its impact. All right. The ... Another wrinkle in the future application here, which would be that they'd have to not only pertain to future films, but there would have to be future films that were ... Where they asked you for a delay in their ... An agreement on their release date? Is there still that thing to have to happen with anything in the future? It would ... It's a very good question, Your Honor. The specific findings by the bankruptcy court pertain to the meaning and intent of Section 5.6 and the meaning of the release requirements. Can I focus on my question just so that we get past this? Is it going to have to ... There's going to have to be a delay in these future films' release as well for you to suffer the consequences of this decision, right? It's broader than that. It certainly includes that, but it would be any attempt by relativity to modify the terms of the agreement by forcing the amendment upon Netflix. All right. So we're hypothesizing that they will ask for this again. We're stuck with the interpretation if they demand that they are exercising those rights. The bankruptcy court, in our view, committed three clear errors here. First, it ignored precedent with respect to the determination of whether this was a core or non-core dispute. For the reasons we set forth in our brief, we believe this is a non-core dispute. It is simply the application of state law contract rights. But even if it was trying to apply the discretionary provisions under MBA v. Hill, the bankruptcy court got it wrong again because it didn't apply the Hill test correctly. The key aspect for determining whether an arbitration agreement conflicts with the bankruptcy code is not whether you fear a result that you don't like. It's whether or not Congress had expressed an intent to preclude the waiver of judicial remedies. You see that clearly in the Shearson American Express case by the Supreme Court. You see that clearly in the CompuCredit case by the Supreme Court, where the Court held that congressional silence is not enough to support that showing. And you see that in Hill. The question here was whether or not there was anything in the bankruptcy code that would have precluded this case going to arbitration. And there was not. The facts here are almost identical to Hill in the sense that it is a post-confirmation dispute involving a pre-petition contract. And this reorganization plan provided post-confirmation jurisdiction, and so the core status question does arise. And that can be based on the impact of the party's dispute on core bankruptcy functions. The question I have for you is, why isn't there such an impact given that the bankruptcy plan assumed the stream of income that these films would produce and or anticipated revenues? I mean, you yourself argued that when you opposed this bankruptcy plan, the district court assumed that, though it was unfavorable to how you wanted the bankruptcy treated, it assumed that, yes, there was going to be this stream of income before you could take advantage of the films. And that's built into this bankruptcy plan. Why isn't your argument that this would present an impact on that part of the plan? Because economic impact on the plan is not enough to make it a core dispute under Orion and Hill. And if it were held to be enough, it would swallow up the whole core-non-core distinction and express fear that is stated in the cases. Every single— But that's the creditor relief provided by the plan, and we have held that bankruptcy courts retain jurisdiction to enforce and interpret their own orders, which this plan is. I'm missing something in your argument here. If there was a line in the plan that spoke to Netflix's release or Netflix's rights, then there might be some basis to say that the court is interpreting a provision of the plan as a way to say, you know, we cited that because it doesn't exist. What this is, is, gee, this would be bad for the debtor going forward. If the debtor had a lease that contained an escalation clause in the future, or the debtor had a borrowing that contained a balloon payment and came in a year, two years, three years later and said, you know, it's really harming our ability to operate because we have these onerous economic conditions, and that's upsetting our business and our ability to survive, we would have that exact kind of economic impact, but it would swallow up— Perhaps I should add that the films, as dealt with in the bankruptcy plan, were the debtor's assets, and that was assumed to then provide a stream of income that the creditors could look to. You're now saying that because of your agreement, their delay in releasing the films makes those films your asset, and that you get to, you get to use the economic benefit of them, taking them out, taking them out of the bankruptcy plan, basically. I don't think that's factually correct, Your Honor. The—Netflix was not asserting that the films were our asset. Going into the bank— You're using that in an exaggerated way, but that's why this is relevant to the plan. Everyone agrees it's relevant to the plan, but relevant to the plan is not the definition of a core dispute. Related to the plan is not the definition. In fact, it's the opposite. Relevant to the plan and related to the plan are, in fact, the definition of non-core disputes. A core dispute is defined by whether you are enforcing a bankruptcy-specific right. When you— The enforcement of a confirmed plan is not something that arises in bankruptcy, or— Not in the, in the global generic sense. We can't say, as has been stated here today, that the plan assumed something, or we've swallowed up, we've created a condition that can never not be met. Every single thing that relates to the debtor can be said to have been an assumption of some kind. That's not what the definition of a core versus non-core issue is. I'm careful not to have you think that this is based on the imprecise language of the plan, bases the conclusions on the films being available for stream of income. The films would have been available for a stream of income. Netflix's position did not change— What makes them not available is that you're saying they didn't release them on a particular date, and therefore our, our streaming rights kick in. And that makes, that makes those films less valuable— The first part of your— —within the bankruptcy plan. The first part of Your Honor's statement is factually incorrect. Going into the bankruptcy, Netflix had the right to release those films on a date certain in June of last year. That wasn't your argument to the bankruptcy court in opposing the plan. I mean, your argument for why you were injured was that they were going to, you were going to have to wait for release. Again, with all due respect, Your Honor, I think that's incorrect. The argument and the objection to the plan was that relativity would not give us the required number of films during a specific period of time because they had not done so before and wouldn't do, do so in the next year, which of course proved to be correct. The bankruptcy court held that the limitation of remedies clause in the contract made that not a breach that we could complain of. So the dispute was over whether they had the ability to deliver the required number. It had nothing to do with the June release date set for these two films, which was a pre-existing right of Netflix under a pre-existing contract the day before and the day after the bankruptcy filing. Nothing changed there. What happened here was that relativity made a mistake and didn't reject the two NOA contracts in the bankruptcy. They realized it after they emerged and the bankruptcy judge gave them a do-over. If you read the order, what you see is the bankruptcy court just cancels those two NOA contracts as though they had been rejected when they in fact were not. Netflix was deprived of its rights under the code, under the Constitution, under the Federal Arbitration Act because the bankruptcy court felt that it was economically important to give relativity a do-over. And as correct an economic proposition as that may be, it's not the law. Well, it's not a court proceeding. Good morning, and may it please the Court. Todd Jeremia for the relativity entities that are appellees here. First, I want to go to what was an issue in the confirmation proceeding. It was not just an issue about whether relativity would deliver the minimum number of films. Netflix also expressly objected to the feasibility of the plan. And what Judge Wiles did during the confirmation process was expressly questioned relativity's expert witnesses on the issue of whether its post-bankruptcy slate was manageable in the projected manner and in the projected sequence that the plan provided for. And in fact, Netflix's feasibility objection and also its objection to the assumption of the license agreement was predicated on the idea that these films are expensive to produce, expensive to market, take management wherewithal to get to theaters. Each one of them has to be released under the Netflix contract to a minimum of 400 theaters theatrically. And Netflix's express objection was based on the idea that relativity might not be able to do that. And so Judge Wiles, discharging his duty under the bankruptcy code to make an independent finding that this plan was feasible, undertook to question relativity's witnesses on, among other things, and the paramount thing, was this release schedule doable for relativity? He expressly questioned relativity's bankers and a film industry expert, Ms. Weishoffer, on whether the films could be released theatrically first and would they be able to obtain the projected revenues. Netflix ultimately, after that testimony, decided to withdraw its feasibility objection. But Judge Wiles nevertheless had the obligation to make a finding that this plan was feasible and he did that. On jurisdiction, Judge Wiles was absolutely correct on the merits of the issue, but Netflix's counsel overlooks that prior to the evidentiary hearing beginning, Netflix expressly conceded that the bankruptcy court has the authority to address the judicial estoppel issue. The quote from appendix at page 451 is Netflix's counsel, Mr. Mick, certainly with respect to the judicial estoppel issue, your honor, I concede the court's ability to resolve that issue. I think we simply disagree with respect to both the test for judicial estoppel and the facts. And at a bare minimum, what that means is that Netflix consented to the bankruptcy court making recommended findings and conclusions and consented to the bankruptcy court doing this and not the arbitral panel. The district court in turn on Netflix's appeal said that whether, Judge Prescott said whether she reviews the judicial estoppel ruling for abusive discretion or de novo, she agrees with it and she affirms it. And so now Netflix has this opportunity to appeal here and that issue is reviewed for abusive discretion. So the court really need not address any of these jurisdictional issues. I think the bankruptcy That was a broad waiver with respect to the court proceeding issue. That is at a bare minimum, it's an acknowledgement that the bankruptcy court can make recommended findings that it's a non-court related matter that the bankruptcy court should adjudicate or may adjudicate with Netflix's consent. On the merits of jurisdiction, though, it's simply just not the case that a state law contract dispute, as Judge Raggi indicated, cannot be a core matter. The U.S. Lines case in addressing a state law contract dispute said that in a post-confirmation dispute, the question as to whether it's core or non-core turns on the nature of the proceeding. And a proceeding can be deemed core on the basis of one or two tests, either or, that is unique to or uniquely affected by bankruptcy proceedings or directly affecting core bankruptcy function. This dispute passes that test in all of those prongs. It is directly affecting the core bankruptcy function, as Judge Wiles indicated, of both plan confirmation and asset allocation among creditors. This was an important revenue stream to all the creditors, not just, not exclusively, unsecured creditors who testified at the hearing or acknowledged at the hearing that this revenue stream is important to the UCC. It's also, in the circumstances of this case, the dispute was unique to or uniquely affected by bankruptcy proceedings because, as Judge Wiles detailed in his decision, what's at core here is that Netflix tried to collaterally attack the confirmation order. It represented one thing during the confirmation proceedings, that it was a material requirement under the contract that only theatrically released films could be streamed by Netflix, and it expressly said with respect to these two films that there was doubt as to whether they would be available to Netflix in 2016 because there was uncertainty as to whether Relativity would release them first. Netflix's representations in that confirmation proceeding directly contradicted the position that it tried to take after confirmation, to take a second whack at getting rid of this contract. And so that is directly tied to the confirmation proceedings. The representations made there are what gave rise to the judicial estoppel and raised judicata rulings. Do you agree with your adversary on this issue, these issues that are still outstanding, or do you think that they're also in some way moot? We think that they are still outstanding, and it's underscored by the conduct of Netflix in that, as I just alluded to, it took one chance to try to eliminate this contract to object to assumption. It took a second chance after confirmation to . . . In connection with what's before us, as an appellate panel, your adversary referred to the output agreement ruling and the $800,000 in fees and a potential attempt by Netflix and Relativity to change the outside dates. Those are the three things that he says continue to be before us and that are not moot. Do you agree with that? That lawsuit is no longer pending. The separate lawsuit in California State Court is no longer pending. It's been withdrawn without prejudice, but it's been withdrawn. The fees application, frankly, doesn't turn one way or the other on whether the outcome is moot. If it were to be deemed moot, the fees are still collectible as a prevailing party. The aspects of the dispute that remain are that this has been a contentious relationship of late, and the order, the bankruptcy court's order, governs the party's relationship in ways going forward, going beyond these two films. There's an express provision of the order that says Netflix may not stream any films, not just these films, before they are that Netflix may not seek to collaterally attack the confirmation order in any other manner. Now, Netflix doesn't challenge those aspects in its appeal. Its appeal brief is all dedicated to these notices of assignment and these films. So in that respect, those issues are no longer live, but the controversy, in terms of jurisdictional mootness, remains live. There's no basis to dismiss it jurisdictionally on the ground of mootness. Unless the Court has further questions, we would reserve on our brief. Thank you. Mick, I think you reserved a little time. Yes, I did. Thank you, Your Honor. I'd like to note up front that as we state in our briefs, we believe that all of the relevant questions here are reviewed de novo, and so we take issue with our adversary's citation to an abuse of discretion standard. We've set forth the citations on the correct standard in our brief, so I won't belabor them. The second issue I'd like to note is that counsel focused on the question in the feasibility determination in the bankruptcy hearing as to whether or not the films could be theatrically released on schedule. I want to note that Netflix has never objected to the theatrical release schedule. Netflix, in fact, encouraged their theatrical release. The earlier, the better. That was never our issue. The point in dispute here was what date we got to stream them, which is a different right under the contracts. The third, I would like to point out that there is no contradiction, we've made this point repeatedly, between a covenant that binds relativity with respect to the nature of the films it must deliver and Netflix's contractual right to waive that covenant and accept nonconforming goods. It's a very basic proposition of contract law. We're now on brief number seven or eight in forum number three. I've never heard anybody contradict it. For that reason, we don't believe there's a contradiction. What about this point that your adversary made, that you conceded that with respect to the issue of judicial estoppel, Judge Wiles had jurisdiction to review that? We believe, and we've stated this in the briefs, that they take that reference out of context. The full citation and discussion can be found on page 960 and 961 of the record, where I spend two entire pages discussing with Judge Wiles the fact that estoppel can arise in different contexts. If the estoppel that was being asserted related to one of Judge Wiles's gatekeeper functions, whether or not relativity could come into the court, which is a function of whether the close nexus test is satisfied, or whether there existed an arbitration agreement between the parties, which is a prerequisite gatekeeper function of the court in a motion to compel arbitration, then those would be things in which the court had initial authority to look at, and judicial estoppel would be in front of the court. But you can't bootstrap federal court jurisdiction by saying, okay, I'm going to rule over here when I don't have that initial basis for jurisdiction. He can't take away arbitral jurisdiction, or he can't claim Seventh Amendment jury trial rights in that fashion. And you will see on 960 and 961 that I explored that in some depth with Judge Wiles. Lastly, as I think we have said consistently, we don't believe that U.S. Lines is the appropriate authority here with respect to the application of arbitration. We think Hill is the correct test. U.S. Lines is distinguishable because there the asset that was at issue was a directly distributed asset in the estate. It was the insurance policies for an asbestos defendant. Here, the Netflix distribution right is not a distributed right. Another important distinction is that when you apply the Shearson American Express distinction with respect to arbitration, in the U.S. Lines situation, the creditors who had been assigned those policy rights and those policy proceeds as part of the distribution would have been precluded from participating in the arbitration over the amount of those recoveries. Not so here. The important creditor here was CIT Bank, which was undisputedly entitled to receive the fee that Netflix would pay. There was no dispute that Netflix would pay it or the amount of the fee, but from a procedural standpoint, CIT Bank was entitled to participate in the arbitration agreement because they were a party to that contract, and they stated so in the hearing. So there is a huge divergence here. U.S. Lines does not apply here. MB&A v. Hill should have applied, and this case should have been decided in arbitration. Thank you. Thank you to both sides. We're going to take the matter under advisement. The last two cases on our calendar today are being submitted, so we stand adjourned.